# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Goodwin*, 2012 IL App (4th) 100513

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN G. GOODWIN, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0513 |
| Filed<br>Rehearing denied | January 31, 2012<br>February 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for escape, aggravated kidnaping, aggravated possession of a converted vehicle and aggravated fleeing or attempting to elude a police officer, the trial court did not err in dismissing defendant's amended postconviction petition alleging that his trial counsel was ineffective in failing to raise the objection that the State dismissed two veniremembers based solely on their race where defendant did not provide any relevant circumstances to substantiate his claim, and without more, the petition merely contained a vague, unsubstantiated and conclusory allegation of a *Batson* violation. |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 05-CF-486; the Hon. Lisa Holder White, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Jay Wiegman, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | |
| | Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and Aimee Sipes Johnson, all of State Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Justices Pope and McCullough concurred in the judgment and opinion. |

**OPINION**

¶ 1    In February 2006, a jury convicted defendant, Stephen G. Goodwin, of (1) escape (720 ILCS 5/31-6(c) (West 2004)), possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2004)), (3) aggravated kidnaping (720 ILCS 5/10-2(a)(2) (West 2004)), (4) aggravated possession of a converted vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2004)), and (5) aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a) (West 2004)).

¶ 2    In March 2006, the trial court sentenced defendant to serve concurrent prison sentences of 7 years for escape, 30 years for aggravated kidnaping, 15 years for aggravated possession of a converted motor vehicle, and 3 years for aggravated fleeing or attempting to elude a police officer.

¶ 3    In March 2010, defendant filed an amended petition for postconviction relief, alleging, in pertinent part, ineffective assistance of trial counsel in that his counsel failed to preserve the claim that the State used peremptory challenges to dismiss prospective jurors based solely on their race. In April 2010, the State filed a motion to dismiss defendant's amended postconviction petition, which the trial court later granted.

¶ 4    Defendant appeals, arguing that the trial court erred by dismissing his amended petition for postconviction relief because he made a substantial showing of a constitutional violation. We disagree and affirm.

¶ 5                                    I. BACKGROUND
¶ 6                    A. The Circumstances Surrounding the State's Charges
¶ 7    In April 2005, the State charged defendant with several crimes, alleging that earlier that month, defendant fled on foot from a police officer's attempt to effect a warrant for his arrest. As defendant ran from the police, he saw a van parked in a driveway that was unattended.

The van's owner was standing in the driveway, watching the action of the police. Defendant entered the van and began to drive away. The owner attempted unsuccessfully to stop defendant, yelling that his 11-month-old daughter was in the back of the van strapped to her car seat. After a brief chase, the police arrested defendant, alleging further that he (1) knowingly confined the minor against her will and (2) refused to comply with their repeated commands to stop.

¶ 8       In June 2005, the State filed the following amended charges against defendant: (1) escape (720 ILCS 5/31-6(c) (West 2004)), (2) possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2004)), (3) burglary (720 ILCS 5/19-1(a) (West 2004)), (4) aggravated kidnaping (720 ILCS 5/10-2(a)(2) (West 2004)), (5) aggravated possession of a converted vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2004)), and (6) aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a) (West 2004)). (Prior to defendant's trial, the trial court granted the State's request to dismiss the burglary charge.)

¶ 9                                    B. *Voir Dire*

¶ 10       In February 2006, the trial court conducted *voir dire* proceedings in which the court, the State, and defendant's counsel asked veniremembers standard questions about their respective backgrounds and beliefs. During that examination, the State used peremptory challenges to dismiss the following five jurors.

¶ 11                                    1. *Catherine Jones*

¶ 12       Jones, who was employed as a cook for 22 years, stated that her son was in jail pending criminal charges, which originated from his attempt to flee the police in a car he was driving without a license. The police claimed that Jones' son attacked them during his apprehension. Jones noted that (1) her son's involvement with the police occurred three weeks earlier, (2) her son had previously served a prison sentence on unrelated charges, and (3) she knew several people with the last name Goodwin but did not know if they were related to defendant. Jones explained that although her son was charged with some of the same criminal offenses defendant was facing, she could be a fair and impartial juror.

¶ 13                                    2. *Joni Hall*

¶ 14       Hall, a mail room clerk for an insurance company for approximately 8 years, stated that she had previously worked as a receptionist for 10 years.

¶ 15                                    3. *Sandra Harden*

¶ 16       Harden stated that she (1) had recently relocated from California where she had been working as a receptionist, (2) attended college for three years, majoring in psychology, and (3) was the plaintiff in a California suit pertaining to a traffic accident. Harden explained that her jury duty service had caused her to lose two temporary employment placement opportunities.

¶ 17                                    4. *Richard White*

¶ 18    White, a restaurant janitor for four years, stated that he was classified as disabled since birth because of a club foot and "one side of his body being smaller than the other." White did not believe that his physical disability would make it difficult for him to serve as a juror, but he noted that it was his first time that he was summoned for jury duty.

¶ 19                                    5. *Marina Loehr*

¶ 20    Loehr, a self-employed owner of a bridal consulting business for six years, stated that she had two years' vocational training as a machine operator.

¶ 21            C. The Jury's Verdict and the Trial Court's Sentence

¶ 22    Following the presentation of evidence and argument at defendant's February 2006 trial, the jury convicted defendant of all charges. In March 2006, the trial court sentenced defendant to serve concurrent prison sentences of 7 years for escape, 30 years for aggravated kidnaping, 15 years for aggravated possession of a converted motor vehicle, and 3 years for aggravated fleeing or attempting to elude a police officer. (The court did not impose a sentence on defendant's possession-of-a-converted-vehicle conviction because the court found that charge to be a lesser-included offense of aggravated possession of a converted vehicle.)

¶ 23            D. Defendant's Motion for a New Trial and Direct Appeal

¶ 24    Shortly after the trial court sentenced defendant, defendant's trial counsel filed a motion for a new trial, arguing, in pertinent part, that he "was not tried by a jury of his peers in that the State preemptively challenged two African-American jurors and one Asian-American juror[,] insuring an all white jury." In rejecting defendant's claim, the court stated the following:

> "[T]he fact that African[-]American jurors were excused by peremptory challenges is something that the Court has to be aware of. *** Any party that believes that a juror is being dismissed because of race can raise that issue. *** The parties can knowingly waive that right, but it can always later be challenged on the basis of ineffective assistance of counsel ***. But this Court is always vigilant to that issue. *** The Court didn't see any effort to remove jurors because of race in this case. Even though it is not [the Court's] responsibility to raise this without it being raised by the Defendant or the State, if this Court had thought that any juror was being excused because of race, [the Court] would have stepped in. There is just no evidence of that in the record. The fact that African[-]American jurors may have been excused is not a reason for a new trial. The law doesn't guarantee anyone a particular racial makeup on a jury. But the Defendant is guaranteed a fair and impartial jury and there is nothing in this record to indicate that he did not receive a trial and a verdict from a fair and impartial jury. *** Motion for a new trial is denied."

¶ 25    Defendant appealed, raising various arguments unrelated to the jury's racial composition,

and this court affirmed defendant's convictions and the concurrent sentences imposed. *People v. Goodwin*, 381 Ill. App. 3d 927, 936, 888 N.E.2d 140, 148 (2008).

¶ 26          E. Defendant's Petition for Postconviction Relief, the State's Motion
                   To Dismiss, and the Trial Court's Determination

¶ 27     In March 2009, defendant *pro se* filed a (1) petition for postconviction relief and (2) motion for the appointment of an attorney. In his postconviction petition, defendant alleged, in pertinent part, ineffective assistance of trial counsel in that his counsel failed to preserve the claim that the State used peremptory challenges to dismiss prospective jurors based solely on their race. In June 2009, the trial court appointed counsel for defendant. In March 2010, defendant's counsel filed an amended petition for postconviction relief, which incorporated the claims defendant alleged in his *pro se* postconviction petition. In April 2010, the State filed a motion to dismiss defendant's amended petition for postconviction relief. Following a May 2010 hearing, the court entered a written order, granting the State's motion to dismiss.

¶ 28     This appeal followed.

¶ 29     II. THE TRIAL COURT'S SECOND-STAGE DISMISSAL OF DEFENDANT'S
                   AMENDED PETITION FOR POSTCONVICTION RELIEF

¶ 30                      A. Proceedings Under the Act

¶ 31     A defendant may proceed under the Act by alleging that "in the proceedings which resulted in his or her conviction[,] there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2010). In noncapital cases, the Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1 through 122-7 (West 2010); *People v. Gomez*, 409 Ill. App. 3d 335, 338, 947 N.E.2d 343, 346-47 (2011). "At the first stage, 'the trial court, without input from the State, examines the petition *only* to determine if [it alleges] a constitutional deprivation unrebutted by the record, rendering the petition neither frivolous nor patently without merit.' " (Emphasis in original.) *People v. Andrews*, 403 Ill. App. 3d 654, 658, 936 N.E.2d 648, 652 (2010) (quoting *People v. Phyfiher*, 361 Ill. App. 3d 881, 883, 838 N.E.2d 181, 184 (2005)). "Section 122-2.1 [of the Act] directs that if the defendant is sentenced to imprisonment (rather than death) and the circuit court determines that the petition is frivolous or patently without merit, it shall be dismissed in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2004)." *People v. Torres*, 228 Ill. 2d 382, 394, 888 N.E.2d 91, 99-100 (2008).

¶ 32     If a petition is not dismissed at stage one, it proceeds to stage two, where section 122-4 of the Act provides for the appointment of counsel for an indigent defendant who wishes counsel to be appointed (725 ILCS 5/122-4 (West 2010)). At the second stage, the State has the opportunity to answer or move to dismiss the petition (725 ILCS 5/122-5 (West 2010)). The relevant question raised during a second-stage postconviction hearing is whether the allegations in the petition, supported by the trial record and accompanying affidavits, demonstrate a substantial showing of a constitutional deprivation, which mandates a stage-

three evidentiary hearing. *People v. Chears*, 389 Ill. App. 3d 1016, 1024, 907 N.E.2d 37, 44 (2009). A trial court's second-stage dismissal of a defendant's postconviction petition under the Act presents a question of law that we review *de novo*. *Chears*, 389 Ill. App. 3d at 1024, 907 N.E.2d at 44.

¶ 33    B. Defendant's Claim That His Postconviction Petition Alleged
a Substantial Showing of a Constitutional Violation

¶ 34    Defendant argues that the trial court erred by dismissing his amended petition for postconviction relief because he made a substantial showing of a constitutional violation. We disagree.

¶ 35    1. *Strickland's Two-Pronged Test for Ineffective-Assistance-of-Counsel Claims*

¶ 36    To establish an ineffective-assistance-of-counsel claim, a defendant must show (1) his counsel's performance was inadequate "in that it fell below an objective standard of reasonableness," and (2) a reasonable probability exists that the outcome of the proceeding would have been different absent counsel's deficient performance. *People v. Moore*, 189 Ill. 2d 521, 535, 727 N.E.2d 348, 355-56 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). "Because defendant must prove both prongs of *Strickland* to prevail on this claim, we may resolve the issue 'solely on the ground that the defendant did not suffer prejudice without deciding whether counsel's performance was constitutionally deficient.' " *People v. Rinehart*, 406 Ill. App. 3d 272, 278, 943 N.E.2d 698, 704 (2010) (quoting *People v. Little*, 335 Ill. App. 3d 1046, 1052, 782 N.E.2d 957, 963 (2003)). "To satisfy the prejudice prong, the party must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceedings' result would have been different." *In re Ch. W.*, 408 Ill. App. 3d 541, 547, 948 N.E.2d 641, 648 (2011).

¶ 37    2. *Defendant's Ineffective-Assistance-of-Trial-Counsel Claim*

¶ 38    In his amended postconviction petition, defendant contends that his trial counsel was ineffective because counsel failed to preserve the claim that the State used peremptory challenges to dismiss prospective jurors based solely on their race. In support of his contention, defendant relies on *People v. Houston*, 226 Ill. 2d 135, 874 N.E.2d 23 (2007), for the proposition that his trial counsel's "failure to object to the State's peremptory challenges waived [his] *Batson* challenge and made it impossible to support his claims." See *Batson v. Kentucky*, 476 U.S. 79, 89, 83 (1986) (where the Supreme Court of the United States held that the equal protection clause of the fourteenth amendment prohibits the State from using peremptory challenges to exclude prospective jurors solely on the basis of race).

¶ 39    In *Houston*, 226 Ill. 2d at 152-53, 874 N.E.2d at 34, the Supreme Court of Illinois, specifically noting the *sui generis* nature of the case, held that when a defendant's *Batson* claim cannot be pursued because the defendant's trial counsel waived the presence of a court reporter at *voir dire* proceedings, in violation of Illinois Supreme Court Rule 608(a)(9) (eff. Dec. 13, 2005), the appropriate remedy on appeal is to remand to the trial court with

directions that the court attempt to reconstruct the record of events that occurred during that proceeding. Defendant admits that this case differs from *Houston*, in that a transcript of the *voir dire* proceedings exists in this case, but nonetheless asserts that by failing to object or make a record of the racial composition of the jurors and the venire, (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) his trial counsel was ineffective "in the same way that trial counsel in *Houston* was ineffective." We are not persuaded.

¶ 40      We first reject defendant's assertion that the defendant's trial counsel in *Houston* was ineffective. In *Houston*, 226 Ill. 2d at 148, 874 N.E.2d at 32, the supreme court concluded only that the defendant had established his trial counsel's performance fell below an objective standard of reasonableness because the record showed that prior to jury selection, counsel waived the presence of a court reporter, which the supreme court surmised could not have been undertaken to gain a strategic advantage. Pursuant to its supervisory authority, the supreme court retained jurisdiction and ordered the trial court to reconstruct the record at *voir dire* so that it could later determine whether trial counsel's substandard performance resulted in prejudice to the defendant. *Houston*, 226 Ill. 2d at 151, 154, 874 N.E.2d at 32-33. Thus, in *Houston*, a *Strickland* assessment regarding the effectiveness of the defendant's trial counsel had yet to be completed. See *People v. Houston*, 229 Ill. 2d 1, 9, 890 N.E.2d 424, 429 (2008) (rejecting the defendant's ineffective-assistance-of-trial-counsel claim because the reconstructed record showed that counsel's waiver of the court reporter during *voir dire* did not prejudice the defendant).

¶ 41      We also reject defendant's assertion that *Houston* supports his claim that his trial counsel's performance was deficient because counsel failed to make a record by not objecting to the State's peremptory challenges during *voir dire*. If this court were to accept defendant's assertion–which we do not–it would essentially *mandate* that trial counsel raise a *Batson* objection anytime the State attempted to execute a peremptory challenge, regardless of the relevant circumstances or rationale expressed by the State for doing so. Thus, under defendant's position, a trial counsel's failure to assert a *Batson* objection when the State exercises a peremptory challenge would render counsel's performance deficient *per se* because of the requirement to establish a record during *voir dire* proceedings. Such a requirement is neither the law in this State nor what the supreme court intended in *Houston*, and this court will not mandate trial counsel assert a *Batson* violation, especially given that, in some instances, counsel may not believe a basis exists to do so.

¶ 42      In this case, defendant's *pro se* petition for postconviction relief alleged, in pertinent part, ineffective assistance of trial counsel in that counsel failed to object to the State's dismissing the only two African-American and Asian-American veniremembers based solely on race. In his March 2010 amended petition for postconviction relief, defendant's postconviction counsel incorporated defendant's allegation without amendment and did not attach any records or other evidence in support of defendant's claim. (Interestingly, defendant in neither of his postconviction petitions sets forth the race of the five jurors excused by the State, and the record does not otherwise indicate their race.) In addition, although defendant was present during the *voir dire* proceedings, he failed to provide any relevant circumstances to substantiate his claim in his separate affidavits in support of his *pro se* and amended

-7-

postconviction petitions. Thus, without more, defendant's amended petition for postconviction relief is inadequate in that it merely contained a vague, unsubstantiated, and conclusory allegation of a *Batson* violation. See *People v. Gutierrez*, 402 Ill. App. 3d 866, 891-92, 932 N.E.2d 139, 164 (2010) (it is settled that a *Batson* case cannot be substantiated merely by the numbers of black veniremembers stricken by the State but instead, by establishment of a *prima facie* case of discrimination based on a consideration of all relevant circumstances).

¶ 43    Accordingly, we conclude that the trial court did not err by granting the State's motion to dismiss defendant's amended petition for postconviction relief.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

¶ 46    Affirmed.